# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00235-CV

**In re Sara Steed, et al.**

### ORIGINAL PROCEEDING FROM SCHLEICHER COUNTY

## M E M O R A N D U M   O P I N I O N

**PER CURIAM**

This original mandamus proceeding involves the temporary custody of a number of children who were removed from their homes on an emergency basis from the Yearning For Zion ranch outside of Eldorado, Texas.[1] The ranch is associated with the Fundamentalist Church of Jesus Christ of Latter-Day Saints (FLDS), and a number of families live there. Relators are thirty-eight women who were living at the ranch and had children taken into custody on an emergency basis by the Texas Department of Family and Protective Services based on allegations by the Department that there was immediate danger to the physical health or safety of the children.

Relators seek a writ of mandamus requiring the district court to vacate its temporary orders[2] in which it named the Department the temporary sole managing conservator of their

---

[1] The Department removed over 450 children from their homes on the Yearning For Zion ranch over the course of three days. This proceeding does not involve parents of all of the children removed.

[2] The temporary orders reviewed in this proceeding were issued following the hearing held April 17-18, 2008, and were signed the week of April 21, 2008.

children.[3] Relators complain that the Department failed to meet its burden under section 262.201 of the Texas Family Code to demonstrate (1) that there was a danger to the physical health or safety of their children, (2) that there was an urgent need for protection of the children that required the immediate removal of the children from their parents, or (3) that the Department made reasonable efforts to eliminate or prevent the children's removal from their parents. Tex. Fam. Code Ann. § 262.201 (West Supp. 2007). Without such proof, Relators argue, the district court was required to return the children to their parents and abused its discretion by failing to do so.

Removing children from their homes and parents on an emergency basis before fully litigating the issue of whether the parents should continue to have custody of the children is an extreme measure. It is, unfortunately, sometimes necessary for the protection of the children involved. However, it is a step that the legislature has provided may be taken only when the circumstances indicate a danger to the physical health and welfare of the children and the need for protection of the children is so urgent that immediate removal of the children from the home is necessary. *See id.*[4] Section 262.201 further requires the Department, when it has taken children into

___

[3] Because temporary orders in a suit affecting a parent-child relationship are not subject to interlocutory appeal under the family code, mandamus review is appropriate. *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991); *In re Vernor*, 94 S.W.3d 201, 210 (Tex. App.—Austin 2002, orig. proceeding).

[4] Section 262.201 provides, in relevant part, as follows:

(a) Unless the child has already been returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession and the temporary order, if any, has been dissolved, a full adversary hearing shall be held not later than the 14th day after the date the child was taken into possession by the governmental entity.

2

custody on an emergency basis, to make a showing of specific circumstances that justify keeping

the children in the Department's temporary custody pending full litigation of the question of

permanent custody. Unless there is sufficient evidence to demonstrate the existence of each of

---

(b) At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

> (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

. . . .

(d) In determining whether there is a continuing danger to the physical health or safety of the child, the court may consider whether the household to which the child would be returned includes a person who:

> (1) has abused or neglected another child in a manner that caused serious injury to or the death of the other child; or

> (2) has sexually abused another child.

Tex. Fam. Code Ann. § 262.201 (West Supp. 2007).

the requirements of section 262.201(b), the court is required to return the children to the custody of their parents. Tex. Fam. Code Ann. § 262.201(b).

In this case, the Department relied on the following evidence with respect to the children taken into custody from the Yearning For Zion ranch to satisfy the requirements of section 262.201:

- Interviews with investigators revealed a pattern of girls reporting that "there was no age too young for girls to be married";

- Twenty females living at the ranch had become pregnant between the ages of thirteen and seventeen;

- Five of the twenty females identified as having become pregnant between the ages of thirteen and seventeen are alleged to be minors, the other fifteen are now adults;

- Of the five minors who became pregnant, four are seventeen and one is sixteen, and all five are alleged to have become pregnant at the age of fifteen or sixteen;[5]

- The Department's lead investigator was of the opinion that due to the "pervasive belief system" of the FLDS, the male children are groomed to be perpetrators of sexual abuse and the girls are raised to be victims of sexual abuse;

- All 468 children[6] were removed from the ranch under the theory that the ranch community was "essentially one household comprised of extended family subgroups" with a single, common belief system and there was reason to believe that a child had been sexually abused in the ranch "household"; and

---

[5] One woman is alleged to have become pregnant at the age of thirteen. She is now twenty-two years old.

[6] This number has fluctuated. It will likely continue to fluctuate somewhat as disputes regarding the age of certain persons taken into custody are resolved.

4

- Department witnesses expressed the opinion that there is a "pervasive belief system" among the residents of the ranch that it is acceptable for girls to marry, engage in sex, and bear children as soon as they reach puberty, and that this "pervasive belief system" poses a danger to the children.

In addition, the record demonstrates the following facts, which are undisputed by the Department:

- The only danger to the male children or the female children who had not reached puberty identified by the Department was the Department's assertion that the "pervasive belief system" of the FLDS community groomed the males to be perpetrators of sexual abuse later in life and taught the girls to submit to sexual abuse after reaching puberty;

- There was no evidence that the male children, or the female children who had not reached puberty, were victims of sexual or other physical abuse or in danger of being victims of sexual or other physical abuse;

- While there was evidence that twenty females had become pregnant between the ages of thirteen and seventeen, there was no evidence regarding the marital status of these girls when they became pregnant or the circumstances under which they became pregnant other than the general allegation that the girls were living in an FLDS community with a belief system that condoned underage marriage and sex;[7]

- There was no evidence that any of the female children other than the five identified as having become pregnant between the ages of fifteen and seventeen were victims or potential victims of sexual or other physical abuse;

---

[7] Under Texas law, it is not sexual assault to have consensual sexual intercourse with a minor spouse to whom one is legally married. Tex. Penal Code Ann. § 22.011(a), (c)(1), (2) (West Supp. 2007). Texas law allows minors to marry—as young as age sixteen with parental consent and younger than sixteen if pursuant to court order. Tex. Fam. Code Ann. § 2.101 (West 2006), §§ 2.102-.103 (West Supp. 2007). A person may not be legally married to more than one person. Tex. Penal Code Ann. § 25.01 (West Supp. 2007).

- With the exception of the five female children identified as having become pregnant between the ages of fifteen and seventeen, there was no evidence of any physical abuse or harm to any other child;

- The Relators have identified their children among the 468 taken into custody by the Department, and none of the Relators' children are among the five the Department has identified as being pregnant minors; and

- The Department conceded at the hearing that teenage pregnancy, by itself, is not a reason to remove children from their home and parents, but took the position that immediate removal was necessary in this case because "there is a mindset that even the young girls report that they will marry at whatever age, and that it's the highest blessing they can have to have children."

The Department argues that the fact that there are five minor females living in the ranch community who became pregnant at ages fifteen and sixteen together with the FLDS belief system condoning underage marriage and pregnancy indicates that there is a danger to all of the children that warrants their immediate removal from their homes and parents, and that the need for protection of the children is urgent.[8] The Department also argues that the "household" to which the children would be returned includes persons who have sexually abused another child, because the entire Yearning For Zion ranch community is a "household." *See id*. § 262.201(d)(2).

The Department failed to carry its burden with respect to the requirements of section 262.201(b). Pursuant to section 262.201(b)(1), the danger must be to the *physical* health or safety of the child. The Department did not present any evidence of danger to the physical health or safety

---

[8] The Department's position was stated succinctly by its lead investigator at the hearing. In response to an inquiry as to why the infants needed to be removed from their mothers, the investigator responded, "[W]hat I have found is that they're living under an umbrella of belief that having children at a young age is a blessing therefore any child in that environment would not be safe."

of any male children or any female children who had not reached puberty. Nor did the Department offer any evidence that any of Relators' pubescent female children were in physical danger other than that those children live at the ranch among a group of people who have a "pervasive system of belief" that condones polygamous marriage and underage females having children.[9] The existence of the FLDS belief system as described by the Department's witnesses, by itself, does not put children of FLDS parents in physical danger. It is the imposition of certain alleged tenets of that system on specific individuals that may put them in physical danger. The Department failed to offer any evidence that any of the pubescent female children of the Relators were in such physical danger. The record is silent as to whether the Relators or anyone in their households are likely to subject their pubescent female children to underage marriage or sex. The record is also silent as to how many of Relators' children are pubescent females and whether there is any risk to them other than that they live in a community where there is a "pervasive belief system" that condones marriage and child-rearing as soon as females reach puberty.

The Department also failed to establish that the need for protection of the Relators' children was urgent and required immediate removal of the children. As previously noted, none of the identified minors who are or have been pregnant are children of Relators. There is no evidence that any of the five pregnant minors live in the same household as the Relators' children.[10] There

[9] The Department's witnesses conceded that there are differences of opinion among the FLDS community as to what is an appropriate age to marry, how many spouses to have, and when to start having children—much as there are differences of opinion regarding the details of religious doctrine among other religious groups.

[10] The notion that the entire ranch community constitutes a "household" as contemplated by section 262.201 and justifies removing all children from the ranch community if there even is one incident of suspected child sexual abuse is contrary to the evidence. The Department's witnesses

7

is no evidence that Relators have allowed or are going to allow any of their minor female children to be subjected to any sexual or physical abuse. There is simply no evidence specific to Relators' children at all except that they exist, they were taken into custody at the Yearning For Zion ranch, and they are living with people who share a "pervasive belief system" that condones underage marriage and underage pregnancy. Even if one views the FLDS belief system as creating a danger of sexual abuse by grooming boys to be perpetrators of sexual abuse and raising girls to be victims of sexual abuse as the Department contends,[11] there is no evidence that this danger is "immediate" or "urgent" as contemplated by section 262.201 with respect to every child in the community. The legislature has required that there be evidence to support a finding that there is a danger to the physical health or safety of the children in question and that the need for protection is *urgent* and warrants *immediate* removal. *Id.* § 262.201(b). Evidence that children raised in this particular environment may someday have their physical health and safety threatened is not evidence that the danger is imminent enough to warrant invoking the extreme measure of immediate removal prior to full litigation of the issue as required by section 262.201.

Finally, there was no evidence that the Department made reasonable efforts to eliminate or prevent the removal of any of Relators' children. The evidence is that the Department

---

acknowledged that the ranch community was divided into separate family groups and separate households. While there was evidence that the living arrangements on the ranch are more communal than most typical neighborhoods, the evidence was not legally or factually sufficient to support a theory that the entire ranch community was a "household" under section 262.201.

[11] The simple fact, conceded by the Department, that not all FLDS families are polygamous or allow their female children to marry as minors demonstrates the danger of removing children from their homes based on the broad-brush ascription of every aspect of a belief system to every person living among followers of the belief system or professing to follow the belief system.

went to the Yearning For Zion ranch to investigate a distress call from a sixteen year-old girl.[12] After interviewing a number of children, they concluded that there were five minors who were or had been pregnant and that the belief system of the community allowed minor females to marry and bear children. They then removed all of the children in the community (including infants) from their homes and ultimately separated the children from their parents. This record does not reflect any reasonable effort on the part of the Department to ascertain if some measure short of removal and/or separation from parents would have eliminated the risk the Department perceived with respect to any of the children of Relators.

We find that the Department did not carry its burden of proof under section 262.201. The evidence adduced at the hearing held April 17-18, 2008, was legally and factually insufficient to support the findings required by section 262.201 to maintain custody of Relators' children with the Department. Consequently, the district court abused its discretion in failing to return the Relators' children[13] to the Relators. The Relators' Petition for Writ of Mandamus is conditionally granted. The district court is directed to vacate its temporary orders granting sole managing conservatorship of the children of the Relators to the Department. The writ will issue only if the district court fails to comply with this opinion.

Before Chief Justice Law, Justices Pemberton and Waldrop

Filed: May 22, 2008

---

[12] The authenticity of this call is in doubt. Department investigators did not locate the caller on the ranch.

[13] The children referred to are those children reflected on Appendix I to Relators' reply brief and who are still in the custody of the Department.